Pratt, J.
The leading questions in this case are of fact and were properly submitted to the jury.
Plaintiff’s claim of title, as did that of defendant also, came through one Toledo. It was alleged that Toledo had borrowed some $17,000 from plaintiff, in behalf of a lady, with which to buy jewelry; that plaintiff’s son-in-law, Valentine, had assisted in the purchase and in behalf of plaintiff, had taken the jewelry as security for the loan; that was April 30, 1879. By the twenty-first of July following the lady was ready to go home to Honduras, but neither she nor Toledo were ready to pay the loan in full; they could then pay but $12,000. It is said that, in order to compose the matter for her accommodation, it was arranged that the $12,000 should be paid to plaintiff and Toledo should assign to plaintiff a lot of rifles and spare parts which he had recently purchased from or through one Farrington, and for a part of which he was still in debt to him. A paper was read in evidence which purports to be an assignment of the rifles, but not the “spare parts,” from Toledo to plaintiff. It bears date July 21, 1879, and was proved by the acknowledgment of the subscribing witness, February 14, 1880. The consideration expressed is one dollar. It is absolute in form, except that it contains a “condition,” so called, that Toledo, or parties representing him, should have the right to repurchase the goods, within three months, at $7,272.37, which sum, according to plaintiff’s story, was the balance of the jewelry loan, with interest, etc.
Although it was claimed on behalf of plaintiff that this assignment was an absolute sale, subject only to the right of repurchase, several expressions dropped from his own bps which clearly tended to show that the real object and understanding between the parties was, that it was solely as security for the balance of Toledo’s debt. This was sufficient to justify a finding that the instrument was a mort *106 gage only. Horn v. Keteltas, 46 N. Y., 605. There was no pretence that it had been filed as a chattel mortgage. Here then we have a “sale” or “an assignment of goods and chattels” upon an expressed “condition,” and further evidence of an understanding which would justify an inference that it was “by way of mortgage or security.” As a matter of course, it was vital in either view, for the plaintiff, “as against the creditors of the vendor ” (Toledo), to prove that the transaction evinced by the writing was “accompanied by an immediate delivery and was followed by an actual and continued change of possession,” or else to repel the presumption of fraud which arose from the absence of such proof; because the defendant’s intestate, who was the sheriff of Kings county, had levied upon the rifles and “spare parts” under an attachment issued against Toledo at the instance of Farrington, his creditor. The plaintiff attempted to prove, and gave evidence tending to show, that he had taken possession of the rifles right away after the instrument was given, and that the transaction evinced thereby was in good faith.
We have examined the case carefully for the purpose, but have failed to find anything in the evidence which conclusively establisehd either of these points. Hence, under the opinion of the general term on the former appeal, both points presented questions of fact, and they were fairly submitted to the jury and decided against the plaintiff by their verdict.
We have carefully examined the numerous exceptions to the charge, and while one or two remarks of the court, upon particular requests, standing alone might be subject to criticism, yet taking the whole charge together, we think the rules of law were plainly and correctly stated, so plainly that the isolated remarks, to which we refer, could not have been misunderstood or misapplied by the jury. It, therefore, follows that the judgment must be affirmed unless error in some other particular appears in the case.
The jury were directed to bring in a sealed verdict, and the usual blank in such cases was given by them by the court, that is to say: “We find a verdict for the—(“plaintiff or defendant”), and you will also fill up the blank as to the value of the chattels as follows: Rifles, $——; spare parts, S-. If you find a verdict for the defendant, you will add that you find the damages for the detention of the chattels in the following amount, fixing that amount at the interest upon the whole value which you find from March 25th, 1880.” That was the date of the replevin from the sheriff by plaintiff.
The jury came into court on the morning following the submission of the case to them, and presented a sealed *107 verdict. Upon examination it was discovered that they had not passed upon all the questions submitted. Their verdict was, “rifles, $6,000; spare parts, $750; total, $6,750.”
The plaintiff’s counsel objects to the direction of the court that the jury should retire and perfect their verdict by stating whether they found for plaintiff or defendant, and that they should fix the damages. The ground of the objection was not stated at the first time, but it is now argued that presumptively the sum which they at first named included interest as damages, in obedience to the charge. We cannot accept this view.
The first imperfect deliverance by the jury simply fixed the value of the rifles at $6,000, which was their conceded value, and the value of the spare parts at $750, which was precisely one-half the amount indicated by the only evidence given on that point. This did no harm to the plaintiff in view of the obvious fact that the jury intended to find, and did finally find against him. Then again: When the court reminded counsel that it had instructed the jury that, if they found for the defendant, they should find 'the interest, it also said, “if counsel could not agree upon the computation of interest it would send the jury back. There was then no suggestion that the sums or total which they had found, included interest; on the contrary, the plaintiff’s counsel said that he did not object to the computation of interest by defendant’s counsel, but did object “to the matter being again given to the jury.” The result was that the court sent the jury back again, and they came a second time into court with their former verdict prefaced by the statement that they found “for the defendant;” but this finding was still incomplete in that it did not state the interest. Whereupon plaintiff’s counsel again objected, this time stating his ground, which was that the jury had already “handed in what purported to be a verdict; and having been discharged, they have no power to amend or alter that verdict.” It is thus plain that the argument that the first deliverance of the jury presumptively included interest, was not taken at the time, and was not then thought of.
Indeed the remarks of the plaintiff’s counsel clearly show that he assumed that the interest was not included in the detail or total sum stated. He finally placed his objection apparently on the theory that the fact that the jury had separated after sealing their first deliverance, and then came into court and delivered that as their verdict, amounted to a discharge. But that was obviously untrue as matter of law.
Upon the whole, we think it plainly appears that plaintiff’s counsel, after the trial, finally concluded that the *108 theory of separation and discharge was unsound on the authority of Warner v. N. Y. C. R. R. Cor (52 N. Y., 437), which he cites to us on this point, and then shifted his ground to the presumption about computation above indicated. This was clearly an after-thought. The whole proceeding shows that the court had carefully instructed the jury about interest, and that if the present contention had been stated or intimated at the time, the rule or direction would have been again explicitly repeated. The first deliverance was not an uncommon blunder of a jury in such cases. The second doubtless proceeded on the theory that plaintiff’s counsel would do as he said he would, viz.: accept his adversaries’ computation of interest, thus relieving them from that duty.
The jury finally rendered their verdict in detail as before, with $2,256, the exact amount of interest on the aggregate valuations, $6,750, as damages for detention, making $9,006 in all; and that was the only verdict entered. Under these circumstances we feel clear that plaintiff suffered no harm in this respect, and if he did it is his own fault.
The plaintiff claims that the verdict should have been in his favor for the recovery of the spare parts in any view. We do not concur in this position.. The spare parts were certainly covered by Toledo’s purchase from Farrington, and they were certainly levied upon by the sheriff. They were with the rifles m the sheriff’s custody, and were thence taken from him by the coroner on plaintiff’s requisition. Hence, unless the plaintiff has established a better title than that which may be presumed from the sheriff’s possession, he must fail in his claim respecting these spare parts. The fact is- that his assignment from Toledo does not, upon its face, cover them. He contends, however, but upon inconclusive proof, that they were treated as an incident to the sale of the rifles—a sort of appurtenance. But there was some evidence tending to repel this claim. Hence, that, too, was a question of fact for the jury, and it was thus submitted to them. True, the defendant’s answer does not specifically claim these spare parts eo nomine, but it does refer to the matter specified in the complaint as the same taking and detention which the answer alleges, and the coronor did actually take the spare parts after the sheriff had made his levy upon them. We have failed to note any exception in this record before the close of the testimony which specifically pointed to any defect in the answer in this particular. If such an objection had been taken it would doubtless have been covered by an amendment, for it could scarcely have surprised or misled the plaintiff.
*109 Besides that, as we have already observed, there was evidence tending to show that the spare parts went with the rifles, and that certainly was the gist of plaintiff’s contention in this respect to make out his title thereto under his assignment from Toledo. We are, therefore, disinclined to regard this point with favor after this verdict.
But there is a point not raised by the appellant which leads to the conclusion that this judgment is for too great a sum. Upon the proofs and the findings of the jury, the sheriff was entitled to the custody of those goods only for the special purpose of satisfying Farrington’s judgment which was but $6,410.83, including costs. Newlin v. Lyon, 49 N. Y., 661; Townsend v. Bargy, 57 id., 665; Allen v. Judson, 71 id., 77.
The interest on Farrington’s judgment made the total amount of the sheriff’s special property in these goods $8,414.16. The costs of the action were $316.39 which would make $8,730.55, while the verdict was for $6,750 as the value of the property, with $2,256 as damages and interest for the detention thereof, making $9,006, and the judgment against plaintiff was for the return of the property or $9,006, besides $316.39 costs, making $9,322,39. In other words the verdict and the judgment are in excess of any legitimate interest of the sheriff to the extent of $591.84, and it should be reduced accordingly. But since the attention of the court was not called to this point, and since the ground of excessiveness was not stated in the motion to set aside the verdict, this reduction should not prejudice the defendant as to his costs on this appeal. Wilson v. Lester, 64 Barb., 434.
It is not apparent tó us that the question whether or not the evidence tended to show that these chattels were the property of the government of Honduras has anything to do with the disposition of the case which we have suggested.
The real question litigated was the validity of' the transfer of the property to the plaintiff and that question was fairly submitted to the jury, and if there was any error in admitting the question as to the title of the Honduras government or in refusing to charge upon that matter, it is plain it did not injure the plaintiff as the sole question submitted was the validity of plaintiff’s bill of sale.
The judgment must be reversed on payment by plaintiff to defendant of costs of this appeal under the rule of Wilson v. Lester (supra), and a new trial must be had, unless the defendant will consent that the judgment appealed from shall be reduced to the sum of $8,730.55; and if such consent, in writing, shall be filed and served on plaintiff’s attorney within ten days after service of the order to be *110 entered on this appeal, the judgment shall be modified accordingly, and as thus modified, shall be affirmed with the costs of this appeal.
Barnard and Dykman, JJ., concur.